his command; but she had actually received his orders, and sailed in pursuance thereof on her cruise. Actual presence of the superior officer, at the time of the capture, is neither supposed nor required by the law. It is sufficient, if the ship be not detached on a separate service by the government, but remain under the command, and subject to the orders of the superior officer. In such a case, the superior officer is deemed to afford constructive assistance, and is responsible for his squadron, however far he may be removed from the scene of action. It seems to me therefore beyond all doubt, that the Chesapeake, at the time of the capture, was not acting independently, but was acting under the command of Commodore Decatur. I know not in what manner she could have assumed an independent character, unless she had been detached by the navy department from the squadron, or had thrown off the subjection to her superior by a voluntary deviation.

The second question is whether Commodore Decatur had left the station, where he had the command at the time of the capture. At the hearing, I expressed a strong opinion, that there was no foundation for the argument on this head; and more mature reflection has satisfied me of the correctness of that opinion. In order to lay a foundation for the argument, it was necessary to show, that Commodore Decatur had a station assigned to him; for otherwise it is impossible to conceive, how he could have left it. Now in the statute, a "station" necessarily includes the idea of local limits. It presupposes certain boundaries of place and command, beyond which the squadron could not lawfully proceed in their cruise. Such is the uniform meaning of the word in the British Naval Code, and it will be difficult to assign it another meaning in our own statute, without involving absurdities in construction. Now, in point of fact, no station was assigned to Commodore Decatur. His orders were of the most unlimited nature. He was at liberty to go where he pleased, consistent with the great object of annoying the enemy.

"The world was all before him, where to choose
His place of rest, and Providence his guide."

The exception then, supposed in the statute, the causa foederis, if I may use the expression, did not arise. The irresistible conclusion is, that as the exceptions of the statute do not apply, the case falls within the general rule, and Commodore Decatur is entitled to the flag twentieth of the proceeds of the captured ship. I am entirely satisfied, that judgment must pass for the plaintiff for the amount specified in the agreement of the parties. Judgment for plaintiff.

---

DECATUR (HUTCHINSON v.). See Case No. 6,956.

---

DECATUR (OLIVER v.). See Cases Nos. 10,494–10,496.

---

## Case No. 3,722.

### DECATUR v. YOUNG.

[5 Cranch, C. C. 502.][1]

Circuit Court, District of Columbia. Nov. Term, 1838.

AFFIDAVIT OF ATTACHMENT—RESIDENCE OF PLAINTIFF.

In an affidavit to obtain an attachment under the Maryland act of 1795, c. 56, it is not necessary to state the plaintiff to be a citizen of the county of Washington, D. C.

[This was an action by Susan Decatur against David Young.]

Mr. Morfit, as amicus curiae, moved the court to quash the attachment, which had been issued under the Maryland act of 1795, c. 56, because the affidavit, upon which the attachment was awarded, did not state that the plaintiff was a citizen of the county of Washington, although she was stated to be a citizen of the District of Columbia. The law is only in force in this county, and the plaintiff must be either a citizen of this county or of one of the states of the Union; but as the affidavit only states that she was a citizen of the District of Columbia, she may be a citizen of the county of Alexandria, in which case she would not be entitled to the remedy under the statute, the words of which are that "if any person whatsoever, not being a citizen of this state, and not residing therein, shall or may be indebted unto a citizen of this state, or of any other of the United States," "such creditor may" apply to a judge, &c., and obtain a warrant to the clerk of the court to issue an attachment, &c. A citizen of Alexandria, cannot be said to be a citizen "of this state, or of any other of the United States." The words, "this state," in order to make the law applicable to this part of the state which was ceded by Maryland, must be construed to mean this county. Mr. Morfit cited Mandeville v. Jarrett, 6 Har. & J. 497, and Yerby v. Lackland, Id. 416.

THE COURT stopped Mr. Marbury, in reply, and overruled the motion, nem. con.

---

## Case No. 3,723.

### In re DECKER.

[8 Ben. 81.][2]

District Court, S. D. New York. April Term, 1875.

BANKRUPTCY — RE-EXAMINATION OF CLAIM—PRINCIPAL CREDITORS—COSTS.

D. being in financial difficulty, certain creditors signed an agreement that, if he would give those who signed it his notes for fifty per cent.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]